Please call the next case. 1083614 O. G. Ross Sisto v. S. B. C. of Arizona Counselor Good morning. It's a pleasure to appear before the panel. Counsel, I've devoted over 30 years to defense, plaintiffs, and workers' compensation. Please speak up. I've devoted more than 30 years of my legal practice to defense and plaintiffs. That isn't a microphone. It's only for recording purposes, so that's why I'd like to speak up. Thank you. I'd like to reserve some time if I could. I don't usually come up here unless I feel there's a proper cause from a legal or, in most cases, an antitrust lawyer. Question. For practical reasons, counsel and his firm did not try the case in arbitration. They did not try it before and review it before the commission. They took it over in the trial court. Just for practical reasons. Legally, as I said, I was bound by the evidence. You're killing an awful lot of your time. You only get 15 minutes. But there's two major problems in this case. We have a 49-year-old female that was 5'2", 240 pounds. She was a customer service rep for Ameritech. And on 10-27-99, she fell in the washroom at the beginning of the trip at 8 a.m. Water slipped all the way on her back. May have had a concussion on the way to the hospital. She threw up. She wore a 405. She got treatment, MRI, only with a brass security. D5, D6 radiation. Pre-existing lumbar degenerative conditions. They didn't do a cervical MRI until December of 2000. A rehab nurse was assigned by the respondent, October 27th of 2000, and followed her through and paid. TTD was paid through November 3rd of 2001 by the respondent. The commission awarded 10 of a man at 27 four-sevenths weeks. The commission changed the award to 2-9-0-1, dated by the department to report an internal medicine issue. Issues regularly for cardiac or diabetes, whatever. The lady had pre-existing uncontrolled diabetes. We don't argue about that. She was obese. She had hypothyroidism. One of the major problems is that when Dr. Buckingham did not even ever examine the lady, just did a record review. But the problem that I see, one, with Dr. Buckingham, is that the respondent did not give available records for review to Dr. Buckingham, starting with the workers' comp notes held by Ameri-Texas House of Justice at C-340.15. They did not show him Dr. Lucan's report. Dr. Buckingham wrote a second report, 220-0-1. And they only mentioned 2-9-0-1. And he said there was a temporary aggravation and that nothing's related. This is Buckingham, your firm? Yes, yes, sir. They gave him none of the rehabilitation notes from Nurse Golisarian, that was working for the respondent, which she diagnosed from the doctors all the way to people who are made of 0-1, of cervical herniations. What is your response to the fact that Dr. Lucan himself, in his report of February 14, 2001, found it difficult to describe her symptoms in their entirety to the exit? Dr. Lucan? Dr. Lucan. Lucan. He found it difficult to describe the claimant's symptoms in their entirety to the accident. So doesn't he sort of qualify his opinion a little bit? How do you explain that? That's the other issue. Dr. Lucan, referred by Dr. Sleck, an orthopedic doctor, Dr. Lucan thought he was an I.R.B. for the respondent, he was the consulting neurosurgeon or physician, and he wrote a narrative report on 2-14. I was going there. I was late from downtown to the visit. The rehab nurse was there. And he wrote two reports. He wrote a narrative report that was offered in evidence by the respondent. Then he wrote a written report and filled in the box and wrote prescriptions for an SSCP, subventive sensory vocal potential test, for spinal cord compression. That was positive, and it was available. It was not tendered to Dr. Buckley. EMGs in Dr. Agarwal's 1-401 report were not tendered to Dr. Buckley. MRIs of 2,000 in Dr. Sleck's report were not given to Dr. Buckley. The only thing that was given to Dr. Buckley was a 9-23-2000 report from Dr. Sleck. All right, so we've covered Sleck, we've covered Buckingham, and we've covered a third doctor. What specific medical evidence disputes the fact that her medical conditions disputes the fact that her need for medical care stemmed from medical conditions that did not preexist in the October 1999 accident? Good question. We have Dr. Sleck, opining, and cervical MRI at C345 was related to her fall on her back, December 23, 2000. She was told to be re-admitted for a narrative report that was never tended to Dr. Buckley. We have Dr. Agarwal, a neurologist in Northwestern, who recommended a surgical consult on a narrative report. It's a 1-4-1, never tended to Dr. Buckley, MRI respondent. We have Dr. Gorishin, Northwestern orthopedic surgeon, operated on a lady, Delbaro Sisto, 11-5-0-1. All right, so what we have here, arguably, is conflicting medical testimony, correct? We don't have, what we have is Dr. Buckley giving a report saying that there's no, there's a temporary aggravation, there's no causation, it's all due to her diabetes. Her diabetes caused her disc injuries. All right, and that's contrary to the evidence that you just pointed out, correct? So, contrary to medicine, and it's contrary to the... Dr. Walmers, this question is in terms of a medicine doctor. She was asked by the media, of course. I was there. It's in the record. She was asked, can diabetes cause her to have a disc. I'm totally treating her, but I already know she has diabetes. She's being treated by orthopontists, neurosurgeons, neurologists, and objective tests. Wasn't all this stuff presented to the commission? Yes, and they ignored it. They ignored it, but they awarded a ten of a million for permanency and 27, of course, of the weeks cutting it back when it was unpayable. A lot more. For 11, they cut it, stopped her at 11. Two months before surgery, they cut off her TTE. And it's not just a difference of medical, basically. The medical committee of the medical department is making an opinion, a record of limited records. Nothing beyond September 23rd of 2012 was given to them to make an opinion. Well, how do you get around the argument that it's within the province of the commission to judge the credibility of the witnesses? They failed to do that. They failed to take them. They don't even mention any of these. I've had a space from the beginning with my co-counsel, and they fail to mention what Dr. Buckingham all kindly brought, what his report says about it. And they failed to look at the medical evidence and the objective tests that were available and the fact that she had to surgery three doctors. In fact, there was the rehab nurse that was following this. There was Dr. Wooten, who wrote a separate report at the foundation, recommended SSCP, EMG, and 1401. Dr. Slack, an orthopedic surgeon, said she needed cervical surgery. He recommended the first cervical MRI in December of 2000. Dr. Agrawal, a neurologist at Northwestern, recommended a consult, an EMG. She had an abnormal SSCP. And Dr. Gresham, the surgeon, was aggravated or caused by the fall. These doctors are specialists in these areas, and their opinions that were available from 2-9 or 2-14, let's say 2-901, their information was not given to Dr. Buckingham or his opinion. What was given to him? He said, okay, there was a temporary aggravation, but everything's caused. And he responded in arguments, defense arguments. There's nothing caused and related. Well, why would the commission award 10% of a man with a permanent disability and 27% of a switch if nothing's related? It's all due to diabetes. Why would they do this? It doesn't make any sense. It follows the specialist's opinion, the objective test, and it follows the case of a cystic aggravation, not who's saying what, but you have a demonstrative fall of a small woman who had previously diabetes and she ends up with an X-surgery. Two levels of death in her cervical area, two herniated discs, T5 and T6. She had previously lumbar problems. We admit that. And Dr. Wootken, the defendant said, and the commission said, we adopt Dr. Buckingham. We adopt Dr. Wootken. Dr. Wootken wrote two separate reports that contradict one another, and one that contradicts the handwritten one. It's the same thing where he recommends an SSCP and an FCE, and he opines before he even gets the results of his test that it's work-related and that she should have an FCE. Dr. Buckingham doesn't even look at it. And Dr. Wootken is a neurosurgeon. And these are two reports that conflict with each other. They weren't put in evidence. I put them in evidence for a petition. They weren't put in evidence with prescriptions by the defendant. And this court does not like surprises. It asks for judicial civility. It asks for good faith in the prosecution of defense claims, the prosecution of claims. I don't see it. Did you take Dr. Buckingham's deposition? No. You didn't cross-examine him on these points you've made? No. There was nothing to cross-examine him on. You didn't take his deposition? No. We objected to any of his findings. The document was hearsay. The standard protocol was to object to his findings. Can you get PPD if you have no permanent damage? You should not. Is it possible? Anything is possible. I mean under the Act. Is it possible to award somebody permanent partial disability benefits if they have no permanent injury? It shouldn't be legal to award somebody permanent partial disability. What did Buckingham say? Buckingham said she had no permanent damage. Dr. Buckingham said it was a temporary aggravation. But he did say it did not, I'm quoting it, did not cause any permanent damage. And then the commission awarded PPD for 50 weeks based on 10% of them as a whole. That's correct. Does that make the decision internally inconsistent once they rely on Buckingham's report? Sure. That's right on the head, Your Honor. That is part of the arguments that I'm trying to get out. Please. I'd like to file an appeal, take it up, and to file a reply for this, because they kept over and over saying take Dr. Buckingham, take Dr. Lucas, accept those. And when they're inconsistent, the commission's decision is inconsistent, and the arbitrator's decision, which they just affirm and change the date without going into any specifics. And I ask that the case, in other words, in this case, manifest the way the law is an opposite conclusion. It's clearly apparent. I mean, is this a case where the arbitrator went after your client because he found that her story was just bizarre? She fell down and wound up with her foot in the toilet? How do you do that? How do you get your foot stuck in the toilet? I don't know. On a bathroom floor. All I know is that she fell backwards. You've got to do a cartwheel to get your foot in the toilet, don't you? I mean, you have to go up, the legs have to come over, and they've got to come over your back. She fell backwards from the water, feet went out from under her in this stall area. Yeah. And that's the difference. And then she said her foot got caught in the toilet. Right. And she may have hit her head also. So she may have been out. And then he came with a co-worker. She hollered at him in the washroom and dragged her out of there. Counsel, your time is up. Thank you. Thank you. May it please the Court, Mr. Eelsburg. Your name? I'm sorry. Stephen McClary. I represent SBC. I knew I'd get one part of this wrong. Right off the bat, I got it out of the way. You know, Your Honors, I used to come up as a younger lawyer before this panel and argue that I had more evidence or better evidence in my quest to overcome this manifest weight of evidence, standard of review that the Court has, that's the scope of review. And then I realized about five years into my practice that more evidence really doesn't make a difference. Better evidence isn't really for the Court to decide. The better evidence is for the Commission to decide as to what, and that went to weight of the evidence that the Commission had to decide relative to the issues that were before it. I had a hard time understanding what manifest weight was. I think I understand what it is now. My understanding of that scope of review is that the Commission has the authority and the obligation to make decisions on all of the issues that come before it. And in the process of doing that, they also have to make rulings and judge the credibility of the evidence, including conflicts in that evidence, including conflicts in the medical testimony or medical records that come before it. And the courts give great deference to the Commission's authority and instruction to make those kinds of decisions and will overturn those decisions if the manifest weight of the evidence is against. Let me just get off the standards for a minute. How can you award permanent partial disability when the doctor upon which you rely says she suffered no permanent damage? How is that possible? Well, you have to assume, with all due respect, Your Honor, you have to assume that the Commission is relying exclusively upon every single word that's contained within the report of Dr. Buckingham. The Commission doesn't indicate in their decision that we also find that she's, that the plaintiff petitioner before the Commission had suffered no permanent injury. Obviously, that's not the case because they awarded her permanent partial disability. What does it say? Dr. Buckingham finds that the petitioner's condition is solely one of uncontrolled diabetes based on his review of all the medical records. Arbitrator agrees. Commission doubts. Well, the arbitrator agreed with Dr. Buckingham. Commission doubts. But as I read through the report, Your Honor, if you read in the last paragraph of the report, that's really, it's the records review until you get to the last paragraph of Dr. Buckingham's report as to what defines what his opinion is. He's stating, I think, two things here. Number one, he's stating that she had an accident, according to the records, on October 27, 1999. That accident didn't cause any permanent damage or exacerbation of her symptoms. She has maximal symptoms with minimal findings, except for the diabetes, which he goes on to state is not related to the accident. So what I think he's saying is that she, he's saying that she has no permanent damage or exacerbation of her symptoms as a result of this accident, but that she has remaining symptoms that are attributable to diabetes, which isn't related to the accident. And I don't think he's saying that her diabetes is the cause of her back condition, necessarily, or specifically the herniated disc that counsel has indicated in his argument. I don't see that that's what he's saying within the context of that opinion in that paragraph. And I don't see it, and I can see how it can be read that way, that that's what his opinion was. But I think what he's saying, again, is two separate things. She has diabetes that's unrelated and it's uncontrolled. She has symptoms that are above and beyond her objective findings. And those are two separate conditions. And although I know that he goes on to discuss what kinds of, within the context of the report, what kinds of symptoms may be related to the diabetes, but I think, in the end, I don't think his opinion is, as the plaintiff has articulated before this court, that diabetes is the cause of her back condition, per se. Buckingham says she has degenerative changes in her lumbar spine. Correct. But he also says that the incident on October the 27th, 1999, did not cause any permanent damage, and then the commission awarded her PPD. And the only evidence, the only medical opinion that they could possibly be relying on in denying this woman benefits is Buckingham's opinions. Well, they could be relying upon her treatment up to that point, too. Is there any other medical evidence? Excuse me. Is there any other medical evidence in the opinion in this record that says that she didn't suffer any injury, that her permanent condition is not related to the injury of October of 1999, other than Buckingham's opinion? Any other doctors? Any other doctors that have said that, made that statement? No. Not that I've seen. But, Your Honor, I have seen countless cases where someone has sustained an injury, a back strain, a fracture, where they've recovered fully, yet they receive permanent partial disability, where they may testify that they have no problems, or there's no permanent that they have no residual problems as of the time that they testified at arbitration, yet they're awarded PPD benefits. I mean, if that's the standard, then I think a lot of, some of these claimants might not be awarded any permanency. I'm not arguing that she's not entitled to permanency. She, I believe... No, I'm questioning whether this opinion is internally inconsistent. That's what I'm questioning. I don't think it is. I think that you're talking about a doctor's opinion, which is not the legal standard for whether or not the commission awards permanent partial disability. It may be his opinion that she doesn't have any permanent aggravation of her underlying symptoms. We're going round and round on this issue. There's a doctrine of law that clearly states that this Court can affirm the commission's decision on any basis in the record. So he asks a very legitimate question, and you're saying, okay, well, yeah, all right, Buckingham may be of that opinion, but that should not preclude a finding of permanency. But even if that is a plausible argument, more to the point, what is the other evidence that would support defining a permanency, aside from Buckingham, that you are talking about? You're asking me to argue whether or not she should have received permanent partial disability. Is there an inconsistency in what is the evidence of the permanency? Well, you're asking me again to argue whether or not she sustained permanent partial disability. It's awarded. I'm not disputing it. I don't think you understand. If this opinion is internally inconsistent, it's getting reversed and it's going back to be done again. So my question is the same as Justice Hudson's. What evidence is in the record that this woman suffered any permanent damage? Because they awarded it and Buckingham said there was none. And the only reason that they terminated this woman's right to benefits was Buckingham's opinion that she suffered no injury that's related to the event at work. Well, I think that that's not the only evidence. I think there's Dr. Lucan that saw her a week later, 10 days later, that made the comments that were referenced by Your Honor that regarded whether or not all of her symptoms could be attributable to the incident. So I think that by inference, he's saying that some of her symptoms could be attributable to the incident. But so is there a difference between what Dr. Lucan has said and what Dr. Buckingham has said? Yes, perhaps there is. But does that ever preclude the Commission from awarding permanent partial disability? It hasn't in my experience. They've awarded permanent partial disability. And I want to come back, and I'm not trying to avoid the question that you're asking me, but I have seen many times where the Commission has awarded permanent partial disability where the claimant, him or herself, have testified that they have no problems at the point of arbitration. Okay. And I know that's a different situation that's here, but I think it's analogous if you're asking me how is it internally illogical for the Commission to award TTD and to also award PPD, rather, and also to cut off the other benefits, TTD and medical, I think it can be because there's other evidence within the record. And I don't think that the Commission's decision specifically states that they are not awarding. Obviously, it doesn't state that we're not awarding permanent partial disability on the basis of Dr. Buckingham's opinion. I think that they have more than that before it. They have a record of treatment before it. And there is, I think there's, inferentially, there's questions of credibility that are raised by the arbitrator's comments that he makes in the decision about whether or not this accident would have happened. I think there was a question of credibility that was raised there. So I think there's other evidence that goes into play. I think it's not a single source of evidence from which the Commission generates a decision as to all of the issues. I don't think that they use Dr. Buckingham's opinion exclusively for the determination as to whether or not this is. Well, to really get to the point here, is there anything in the record, what is permanent partial disability anyway? What is it? Well, it should be permanent. There should be a, and I can make arguments that I don't believe the back strains are permanent or knee strains are permanent once they reach a state of maximum medical improvement. If that's the argument that you're asking me to make, I stop making that argument because it doesn't work. We don't deny permanent partial disability because someone gets better from their injury. They get awarded for it. That's the way it is. I've seen it for 20 years. And I'd be happy, my clients would be happy, if the Commission wouldn't award benefits if someone got better from their injuries. Because in theory, that's the reason why we treat them, that we award them medical treatment, temporary disability benefits to assist them economically during their period of recovery. Why the Commission awards PPD, in this case, I think it's similar to a thousand other cases that I've seen. And I don't mean to be disrespectful, but a thousand other cases where the employee has recovered from their injuries and they have still been awarded some disability as a result of that injury in and of itself. Is it right? Is it the way that I don't, you know, theoretically, as a young man, I didn't think it was, but I stopped that argument. That's why you don't see me here regularly, because that argument doesn't work. And I think you know my arguments from my brief. And we would certainly ask you to affirm the decision of the Commission in whole because we, the defendant, believe that the plaintiff hasn't overcome his burden of establishing that the decision as a whole, in each element of it, is against the manifest way of the evidence. I thank you for your time. Thank you, Counsel. Mr. Quigley, if I may? Yes. I have a question about, is the Commission's decision internally consistent? And I don't believe the defendant, Counsel, really answered that question. He answered it by saying, well, it's given to a lot of other cases. And your response is? And in those cases where it's given, the doctor, the treating doctor, says the condition is causally related, there was a permanent injury, fracture, muscle weakness. In this case, Dr. Buckingham, which the Commission adopts, his opinion not only says it's not causally related, he says there's no permanent injury. And therefore, that would make the decision internally inconsistent by awarding BVD. And it does not apply to other cases where a doctor says, yes, that injury is causally related and there is a permanent defect from that injury. We don't have that. And that's why I think, I believe, that the decision is internally inconsistent. And it has not been answered by Counsel. I'm trying to do my best to answer the question and to respond to Counsel's answer to your question. Thank you. Thank you, Counsel. This matter will be taken under advisement.